IN THE SUPREME COURT OF THE STATE OF NEVADA

TODD MATTHEW PHILLIPS,
Appellant,
vs.
AMBER PHILLIPS, N/K/A AMBER
KORPAK,
Respondent.

TODD MATTHEW PHILLIPS,
Appellant,
vs.
AMBER PHILLIPS, N/K/A AMBER
KORPAK,
Respondent.

No. 82414

No. 82693

FILED

APR 29 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

These appeals challenge a district court child custody order (Docket No. 82414) and an award of attorney fees (Docket No. 82693) arising from divorce proceedings. Eighth Judicial District Court, Clark County; Vincent Ochoa, Judge.[1] After an evidentiary hearing on custody of the parties' minor child, the district court awarded sole legal and primary physical custody to respondent Amber Phillips and awarded her attorney fees. Appellant Todd Matthew Phillips now challenges these determinations on various grounds.

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in Docket No. 82414. And, having considered the pro se opening brief filed in Docket No. 82693, we conclude that a response is not necessary, NRAP 46A(c), and that oral argument is not warranted, NRAP 34(f)(3). We therefore have decided the appeal in Docket No. 82693 based on the pro se brief and the record. *Id.*

22-13646

*Child custody order (Docket No. 82414)*

We first address the child custody order, which we review for an abuse of discretion. *See Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). "In reviewing child custody determinations, we will not set aside the district court's factual findings if they are supported by substantial evidence, which is evidence that a reasonable person may accept as adequate to sustain a judgment." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007) (footnote omitted).

Todd first challenges the district court's use of NRS 125C.0035(5)'s best-interest rebuttable presumption based on domestic violence to support its decision, arguing that it improperly relied on a 2018 temporary protection order (TPO) action to find that he engaged in one or more acts of domestic violence.[2] But the district court appropriately relied

---

[2]NRS 125C.0035(5) provides:

> Except as otherwise provided in subsection 6 or NRS 125C.210, a determination by the court after an evidentiary hearing and finding by clear and convincing evidence that either parent or any other person seeking physical custody has engaged in one or more acts of domestic violence against the child, a parent of the child or any other person residing with the child creates a rebuttable presumption that sole or joint physical custody of the child by the perpetrator of the domestic violence is not in the best interest of the child. Upon making such a determination, the court shall set forth:
>
> (a) Findings of fact that support the determination that one or more acts of domestic violence occurred; and
>
> (b) Findings that the custody or visitation arrangement ordered by the court adequately

on the proceedings from the TPO action, by way of judicial notice, as they addressed issues relevant to the child custody determination and satisfied the requirements for judicial notice of records in closely-related cases.[3] *See* NRS 47.150(1) (providing that a court may take judicial notice *sua sponte*); NRS 47.130(2) (providing that a judicially-noticed fact must be "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); NRS 125C.0035 (listing factors to consider in child custody determinations, including "the level of conflict between the parents," the parents' ability to cooperate, and "[w]hether either parent . . . has engaged in an act of domestic violence against . . . any other person residing with the child"); *Mack v. Estate of Mack*, 125 Nev. 80, 91-92, 206 P.3d 98, 106 (2009) (noting an exception to the general rule

---

protects the child and the parent or other victim of domestic violence who resided with the child.

[3]Indeed, the district court was required to consider the TPO action as proceedings impacting the district court's custody determination, *see* NRS 125A.355(2) (stating that "a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to NRS 125A.385"); NRS 125A.385 (setting forth required disclosures regarding other proceedings impacting child custody), and Todd fails to show the judicial notice violated his procedural due process rights, *see J.D. Constr., Inc. v. IBEX Int'l Grp.*, 126 Nev. 366, 376, 240 P.3d 1033, 1040 (2010) (explaining due process requirements). Finally, Todd's substantive challenges to the TPO are irrelevant as it has expired and is not before us on appeal, *see In re Temp. Custody of Five Minor Children*, 105 Nev. 441, 444, 777 P.2d 901, 902 (1989) (holding that no appeal may be taken from a temporary order subject to periodic mandatory review), and claim preclusion does not bar the finding of domestic violence in this case as child custody was not an issue in the TPO action, *see Five Star Cap. Corp. v. Ruby*, 124 Nev. 1048, 1052, 194 P.3d 709, 711 (2008) (setting forth a three-factor test for determining when claim preclusion bars a claim in a subsequent case), *holding modified on other grounds by Weddell v. Sharp*, 131 Nev. 233, 350 P.3d 80 (2015).

against taking judicial notice of records in another case where the closeness of the cases and the particular circumstances warranted it). Moreover, the evidence in the TPO action supports the district court's application of 125C.0035(5)'s best-interest rebuttable presumption, as it provided substantial evidence that Todd engaged in one or more acts of domestic violence against Amber. This evidence included that Amber was fired from a job based on safety concerns relating to Todd's conduct; and two restraining orders obtained against Todd by Amber and another woman in California. In addition to the evidence and findings made in the TPO action, the record contains documents from the child's school in response to the trial subpoena, which included a letter to the school's security site supervisor by the school's counsel. This letter alerted the supervisor to Todd's hostile language and demeanor, and to threats Todd allegedly made to shoot Amber and their child. Combined with Amber's testimony regarding various instances of abuse, deemed credible by the district court, and Todd's failure to meaningfully rebut this presumption,[4] the district court did not abuse its discretion by applying NRS 125C.0035's presumption to find that giving Todd physical custody of the child would not be in the child's best interest.[5] *See Castle v. Simmons*, 120 Nev. 98, 102-03, 86 P.3d 1042, 1045-46 (2004)

---

[4]Todd did not request any transcripts, *see* NRAP 3E(c)(2)(A) (requiring appellant to file and serve a transcript request form "[w]hen a transcript is necessary for an appeal"), and states that his arguments can be resolved without transcripts. We do not address if the district court erred by ignoring evidence of a police report because Todd fails to show that he attempted to introduce the report at trial.

[5]We need not address Todd's arguments regarding NRS 432B.157's custodial presumption regarding domestic violence because this case did not involve Chapter 432B proceedings.

(explaining that the district court analyzes NRS 125C.0035(5)'s rebuttable presumption based on a totality of the evidence and further holding that "we will not reweigh the credibility of witnesses on appeal"). And because Todd does not otherwise contest the district court's specific findings on the NRS 125C.0035 best-interests-of-the-child factors, we conclude that the district court did not abuse its discretion in its child custody determination.[6] *See Wallace,* 112 Nev. at 1019, 922 P.2d at 543; *Castle,* 120 Nev. at 102-03, 86 P.3d at 1045-46.

Todd also claims that the custody order violated SCR 251, which states that the district court shall "resolve the issues affecting the custody or visitation of the child or children within six months of the date that such issues are contested by the filing of a responsive pleading that contests the custody or visitation issues." However, the rule further allows extensions of time for "[e]xtraordinary cases that present unforeseeable circumstances" so long as the district court enters "specific findings of fact regarding the circumstances that justify the extension of time." *Id.* Here, the district court made the required findings to justify an extension of time, and the record supports those findings, including that Todd sought several extensions of time, including four requests to continue the trial; that he

---

[6]Todd further claims that the district court committed fraud by including a recitation of Amber's testimony in its order stating that "[Amber] learned that [Todd] made phone calls to the child's school and threatened to shoot up the school which resulted in the lockdown." He asks that we excise this from the custody order. In context, the district court was reciting Amber's testimony at the evidentiary hearing. Furthermore, the TPO evidence, properly admitted by the district court, and school records otherwise support this finding. *See Wallace,* 112 Nev. at 1019, 922 P.2d at 543; *Castle,* 120 Nev. at 102-03, 86 P.3d at 1045-46. Thus, we reject Todd's contention.

caused further delay by filing several failed motions to disqualify the presiding judge; and that the Covid-19 pandemic caused a continuance from approximately March 2020 to October 2020. Under these facts, we conclude the district court complied with SCR 251.

Todd next makes several constitutional arguments, all of which lack merit upon de novo review. *See Jackson v. State*, 128 Nev. 598, 603, 291 P.3d 1274, 1277 (2012) (holding that this court applies de novo review to constitutional issues). His constitutional challenge to NRS 125C.0035 fails because Todd and Amber have equal fundamental rights to care for their child, leaving the best interest of the child as the sole consideration to decide custody. *See Rico v. Rodriguez*, 121 Nev. 695, 704, 120 P.3d 812, 818 (2005) (holding that "[i]n a custody dispute between two fit parents, the fundamental constitutional right to the care and custody of the children is equal"; therefore, "the dispute in such cases can be resolved best, if not solely, by applying the best interests of the child standard"). And thus, we also reject Todd's argument the district court's order was subject to strict scrutiny review. *See id.* (reviewing the child custody order without addressing strict scrutiny).

Todd's due process challenge to the divorce complaint fails because it was the district court's later orders, not the complaint, that affected Todd's custodial rights.[7] *See Wiese v. Granata*, 110 Nev. 1410, 1412, 887 P.2d 744, 745 (1994) ("[D]ue process requires that notice be given before a party's substantial rights are affected."). And we also reject Todd's

---

[7]We further conclude that the district court properly rejected Todd's NRCP 12(b)(5) motion seeking to dismiss the complaint given that Amber alleged facts that, when taken as true, would entitle her to custody of the minor child. *See Edgar v. Wagner*, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985) (providing the standard for dismissal under NRCP 12(b)(5)).

argument that the district court erred by not holding a jury trial. There is no right to jury trials in proceedings before the family court division. *See In re Parental Rights as to M.F.*, 132 Nev. 209, 215, 371 P.3d 995, 999-1000 (2016) (holding that there is no right to a jury trial for termination of parental right proceedings and explaining the policy rationale for why it is improper to hold jury trials in cases in family divisions of district courts); *Barelli v. Barelli*, 113 Nev. 873, 879, 944 P.2d 246, 249 (1997) (affirming the district court's conclusion that there is no right to a jury trial in divorce proceedings because there is no right to a jury trial in domestic proceedings). Additionally, Todd's double jeopardy and statute-of-limitations challenges to the court's finding of domestic violence would be relevant only if criminal charges were at issue, but no such charges are at issue here. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) (holding that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense"); *see also* NRS 125C.230 (placing no time limit on the district court's consideration of domestic violence issues relevant to its custody determination).

Finally, Todd makes several arguments regarding the Honorable Judge Vincent Ochoa's refusal to recuse based on alleged appearances of impropriety.[8] We review a judge's decision not to recuse for a "clear abuse of discretion."[9] *Canarelli v. Eighth Judicial Dist. Court*, 138

---

[8]Todd makes additional arguments that are irrelevant. As Todd's parental rights have not been terminated, we need not address his arguments that there were no grounds for such termination. And, because he fails to show that Amber was charged with kidnapping, we decline to address his argument that Amber kidnapped their child in 2018.

[9]We reject Todd's arguments to the extent he asserts that Judge Ochoa's conduct required disqualification. Todd does not challenge the

Nev., Adv. Op. 12 at *2 (2022); *see* NCJC Rule 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid . . . the appearance of impropriety."). The test for an appearance of impropriety is "whether the conduct would create in reasonable minds a perception that the judge violated [the NCJC] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." NCJC Rule 1.2, cmt. 5; *see also* NCJC Rule 2.11(A).

We reject most of Todd's arguments because they are based on events that occurred during the course of the TPO and child custody proceedings, none of which displayed a "deep-seated favoritism or antagonism" by Judge Ochoa, *see Canarelli*, 138 Nev., Adv. Op. 12 at *3 (holding that, generally, an extrajudicial source is required for recusals) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); or on events which Todd himself created such as suing the judge in federal court, *cf. City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644, 649, 940 P.2d 134, 138 (1997) (holding that a party "should not be permitted to create a situation involving a judge and then claim that the judge" should be removed due to the events the party created). As for Todd's argument that Judge Ochoa should have recused himself because he allegedly falsified TPO documents, Todd failed to raise this issue in the TPO case and we thus

Honorable Chief Judge Linda Bell's orders denying his various motions and pleadings seeking disqualification below and he fails to identify any conduct requiring Judge Ochoa's disqualification. *See* NCJC Rule 2.7 (providing that a district court judge generally has a duty to sit and preside to the conclusion of all proceedings unless disqualification is required by law); *Millen v. Eighth Judicial Dist. Court*, 122 Nev. 1245, 1253, 148 P.3d 694, 699 (2006) (discussing the duty to sit).

do not consider it. *See Truesdell v. State*, 129 Nev. 194, 200, 304 P.3d 396, 400 (2013) (holding that "a party must challenge a TPO's validity before the court that issued the order"). Todd's next argument, that Judge Ochoa should have recused because Amber's counsel contributed to the judge's campaign, lacks merit. Todd does not allege that the campaign contributions were beyond the statutory limits for such contributions. *Cf. Ivey v. Eighth Judicial Dist. Court*, 129 Nev. 154, 162, 299 P.3d 354, 359 (2013) ("Campaign contributions made within statutory limits cannot constitute grounds for disqualification of a judge under Nevada law."); *In re Petition to Recall Dunleavy*, 104 Nev. 784, 790, 769 P.2d 1271, 1275 (1988) (explaining that "intolerable results" would occur if litigants could disqualify a judge because an attorney for the opposing party donated to the judge's campaign). And he otherwise fails to point to any facts regarding the contributions that reasonable minds would perceive as Judge Ochoa engaging in any conduct affecting his "honesty, impartiality, temperament, or fitness to serve as a judge."[10] NCJC Rule 1.2, cmt. 5. Lastly, Todd argues that Judge Ochoa should have recused himself because he allegedly gave Amber legal advice by instructing her to "file a motion" alleging domestic violence facts against him. Because Todd did not request any transcripts, *see* NRAP 3E(c)(2)(A) (requiring appellant to file and serve a transcript request form "[w]hen a transcript is necessary for an appeal"), we do not

---

[10]Because Todd fails to identify the specific issues with the campaign contribution, we further reject any argument that Judge Ochoa's recusal was compelled by the Due Process Clause. *See Ivey*, 129 Nev. at 159, 299 P.3d at 357 (analyzing whether a "judge's recusal was compelled by the Due Process Clause" due to campaign contributions by examining various factors "on a case-by-case basis," including the size and timing of the contributions).

have the necessary information to address his argument. Nevertheless, to the extent the district court informed Amber of her legal options, we do not believe this warranted recusal. NCJC Rule 1.2, cmt. 5.

*Attorney fees order (Docket No. 82693)*

Turning to the district court's award of attorney fees, we discern no abuse of discretion. *See Blanco v. Blanco*, 129 Nev. 723, 732, 311 P.3d 1170, 1176 (2013) ("The decision whether to grant . . . attorney fees is, by statute, purely discretionary with the district court."). The district court provided a valid statutory basis for the attorney fee award. *See* NRS 125.150(3) (providing that the district court may award reasonable attorney fees in a divorce proceeding); *Frantz v. Johnson*, 116 Nev. 455, 471, 999 P.2d 351, 361 (2000) ("It is an abuse of discretion to award attorney fees without a statutory basis for doing so."). Additionally, the district court noted that it had considered the disparity in income of the parties, and Amber's *Brunzell*[11] brief, which the district court specifically requested before ruling on attorney fees.[12] *See Miller v. Wilfong*, 121 Nev. 619, 623, 119 P.3d 727, 730 (2005) (clarifying what a district court must consider when a party represented by pro bono counsel seeks attorney fees, and further explaining the policy reasoning behind permitting pro bono counsel to receive such fees). Its order also analyzed each *Brunzell* factor, including Todd's

---

[11]*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 455 P.2d 31 (1969).

[12]Regarding the disparity of income, Todd appears to argue that the district court did not consider the issue because it did not order Amber to file an updated Financial Disclosure Form. Todd fails to demonstrate that the district court had to order Amber to file such a form, especially where Todd failed to show that Amber's financial situation had changed. Additionally, to the extent Todd argues that the district court erred by imputing income of $5,000 per month to him, the record reflects that the parties stipulated to this amount.

litigation practices and how they increased Amber's legal fees, in finding the fees reasonable; and ultimately reduced the requested fee amount by nearly half. Finally, because the award was based on NRS 125.150(3), we need not address Todd's arguments regarding NRS 18.010(2)(b). Based on the foregoing, we

ORDER the judgments of the district court AFFIRMED.[13]

_____, C.J.
Parraguirre

_____, J.          _____, Sr.J.
Cadish                        Gibbons

cc:    Hon. Vincent Ochoa, District Judge
       Todd Matthew Phillips
       Hutchison & Steffen, LLC/Las Vegas
       Eighth District Court Clerk

---

[13]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

The motions to stay the custody order are denied as moot.

SUPREME COURT
OF
NEVADA

(O) 1947A